IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| ERIC W. LOVELACE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case No. CIV-17-775-D |
| v. | ) |
| | ) |
| LEVY OKLAHOMA, INC., | ) |
| | ) |
| Defendant. | ) |

# **O R D E R**

Before the Court is Defendant's Motion for Summary Judgment [Doc. No. 38], filed pursuant to Fed. R. Civ. P. 56. Defendant Levy Oklahoma, Inc. seeks a judgment in its favor on all claims asserted in the Amended Complaint: hostile work environment and retaliation under Title VII of the Civil Rights Act of 1964 as amended ("Title VII"), 42 U.S.C. § 2000e *et seq.*; parallel claims under the Oklahoma Anti-Discrimination Act, Okla. Stat. tit. 25, § 1301 *et seq.*; and intentional infliction of emotional distress. The Motion is fully briefed and ripe for decision.[1]

## **Standard of Decision**

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is

---

[1] The Motion is supported by Defendant's opening brief [Doc. No. 39] and reply brief [Doc. No. 43], and opposed by Plaintiff's response brief [Doc. No. 42]

genuine if the evidence is such that a reasonable jury could return a verdict for either party. *Id*. at 255. All facts and reasonable inferences must be viewed in the light most favorable to the nonmoving party. *Id*. If a party who would bear the burden of proof at trial lacks sufficient evidence on an essential element of a claim, all other factual issues concerning the claim become immaterial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The movant bears the initial burden of demonstrating the absence of a dispute of material fact warranting summary judgment. *Celotex*, 477 U.S. at 322-23. If the movant carries this burden, the nonmovant must go beyond the pleadings and "set forth specific facts" that would be admissible in evidence and that show a genuine issue for trial. *See Anderson*, 477 U.S. at 248; *Celotex*, 477 U.S. at 324; *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998). "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Adler*, 144 F.3d at 671; *see* Fed. R. Civ. P. 56(c)(1)(A). "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3). The Court's inquiry is whether the facts and evidence identified by the parties present "a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *See Anderson*, 477 U.S. at 251-52.

## Statement of Undisputed Facts[2]

Defendant holds a contract to provide food and beverage services at the Chesapeake Energy Arena in Oklahoma City, Oklahoma. The arena provides the home court for the Oklahoma City Thunder, which is a member of the National Basketball Association (NBA). Plaintiff began working for Defendant in October 2015 as a part-time cook, and he still holds that position. Plaintiff's common-law wife, Charity Scarlett, was also hired by Defendant in October 2015 to work in the sanitation department. During the relevant time period, one of Plaintiff's supervisors was Katie Aberson, who was assistant director of operations. The director of operations was Joseph Guthrie, whose responsibilities included investigating employee complaints with assistance from the human resources (HR) department.

Plaintiff was first assigned in October 2015 as a line cook in the 216 food stand, which sold items such as hot dogs, corn dogs, and French fries. After the NBA season concluded in May 2016, Plaintiff continued as a line cook but was reassigned to the Gastropub, which sold "strip steaks" and "higher grade food." Lovelace Dep. 23:2-24:17, 25:1-6. In October 2017, Plaintiff was again reassigned as a line cook at the Saucy Chicken, which sold items such as chicken strips, popcorn chicken, and chicken salad. All three restaurants are on the club level of the arena, and Plaintiff's hourly rate of pay did not depend on where he worked. On May 28, 2016, his wage rate increased from $10.00

---

[2] This statement includes material facts that are properly supported by the asserting party and not opposed in the manner required by Rule 56(c). Any fact stated by a party that is not supported by the party's citation to the record is disregarded.

per hour to $10.25 per hour, and on October 1, 2017, it increased to $10.50 per hour. This increase happened to coincide with his reassignment from Gastropub to Saucy Chicken.

On about March 6, 2016, according to Plaintiff, Ms. Aberson asked him during a work shift while she was wearing a tight skirt whether he thought her butt looked jiggly. Plaintiff also says he overheard Ms. Aberson make a double entendre comment to his wife about knowing "how to handle that wiener, because [Ms. Scarlett] had a foot-long hot dog in her hand." *See* Lovelace Dep. 43:23-44:8. Plaintiff reported the "jiggly butt" comment to Mr. Guthrie, and provided a written statement on March 14, 2016. Plaintiff did not report the "hot dog" comment, but Ms. Scarlett included it in a complaint she made about Ms. Aberson's conduct. Ms. Scarlett also reported that she overheard Ms. Aberson say to a co-worker about Plaintiff that he was "hot," but Plaintiff did not hear this comment.

Mr. Guthrie investigated Plaintiff's complaint and learned that a few days prior to Ms. Aberson's alleged "jiggly butt" comment, Ms. Scarlett had made an unsolicited remark to Ms. Aberson that her pants were tight and she was "jiggling." *See* Scarlett Dep. 24:9-15. Ms. Aberson admits Ms. Scarlett made this remark, but denies asking Plaintiff a few days later whether her butt was jiggly. As a result of the investigation, Mr. Guthrie verbally counseled Ms. Aberson to maintain a professional demeanor in the workplace, although he was not convinced the allegations against her were true. Plaintiff was not subjected to any further harassment from Ms. Aberson.[3] Plaintiff was never physically touched by Ms. Aberson or any other employee of Defendant in the workplace.

---

[3] Plaintiff has testified about one other incident that occurred after the investigation, in the latter part of the 2018 NBA season, in which a co-worker remarked that he could lick something

Dissatisfied with Mr. Guthrie's handling of the matter, Plaintiff filed an EEOC charge of discrimination in September 2016, alleging that he was subjected to verbal sexual harassment by Ms. Aberson and he was retaliated against after he complained. Plaintiff alleged, and has testified in this case, that after he complained of sexual harassment by Ms. Aberson, he was accused by supervisors of stealing food and was alienated by managers. No disciplinary action was taken. Ms. Aberson has testified that Plaintiff was neither accused of stealing food nor treated differently than other employees after he complained of harassment.

Plaintiff also alleged in his EEOC complaint, and argues in this case, that another retaliatory act was Defendant's termination of Ms. Scarlett's employment in July 2016. It is unclear why Plaintiff believes the termination was directed at him, but he lacks any evidence that the termination was retaliatory.[4] Thus, this unsubstantiated allegation is disregarded.

---

off the floor with his long tongue. Plaintiff took the comment as discriminatory and sexual, and reported it to Defendant. *See* Lovelace Dep. 56:13-58:19. Plaintiff identifies no facts that would connect this 2018 comment to the alleged harassment by Ms. Aberson in 2016.

[4] Defendant has presented undisputed evidence that Ms. Scarlett's termination was the result of its implementation of new NBA security standards that required all arenas and contractors to conduct criminal background checks on employees. Ms. Scarlett underwent a background check, which revealed two prior felony convictions. Although Ms. Scarlett denies her criminal record was the reason for her termination, she lacks first-hand knowledge of any employee with a felony conviction who was not terminated. She testified in her deposition only about criminal "charges" against a boss and some "younger guys" still employed by Defendant after her discharge. *See* Scarlett Dep. 49:2-50:14. This testimony appears to be based on hearsay, would not be admissible at trial, and so cannot be considered under Rule 56(c). Plaintiff points to no evidence, other than Ms. Scarlett's testimony, that would refute Defendant's evidence that it uniformly terminated employees who failed criminal background checks after the policy change.

Plaintiff also alleges in this case that his work hours were reduced in retaliation for his complaints. As support, Plaintiff presents evidence that his gross pay for 2016 was $3,548.42, but dropped to $2,376.74 for 2017. Plaintiff has testified in his deposition that his work hours decreased after he was transferred from the Gastropub to the Saucy Chicken in October 2017 for the 2017-18 NBA season. This decrease is reflected in the 2017 wage statement. Plaintiff believes the reduction in his work hours was retaliatory, but was simply delayed by understaffing in 2016.

Throughout Plaintiff's employment by Defendant, he has worked a separate, full-time day job for the City of Spencer.[5] As a result, Plaintiff's work schedule has differed from other employees of Defendant in that his shift generally starts at 6:00 p.m. (or later on certain days), but most employees are scheduled to arrive at the arena around 4:00 p.m. on game days. Ms. Aberson has testified by affidavit that Plaintiff was transferred to the Saucy Chicken to better accommodate his unique schedule because less preparation time was involved in making the food items sold there. Plaintiff agrees that the Saucy Chicken requires less preparation and cleaning time than Gastropub (and thus results in shorter work shifts), but he denies that his outside work schedule was the real reason for his transfer. Also, Plaintiff views working at the Saucy Chicken as less desirable than Gastropub. He admits, however, that a person working at Gastropub was not more likely to receive a promotion than an employee working at any other restaurant or food stand in the arena, and that his job position and hourly rate of pay were not affected.

---

[5] Plaintiff began his municipal employment in December 2015, a couple of months after he started working for Defendant.

6

Plaintiff has testified that after he was transferred to the Saucy Chicken, the City of Spencer changed his job duties to the position of meter reader in February 2018, making it harder to get to work shifts at the arena and harder to work weekends. *See* Lovelace Dep. 29:23-30:25. Plaintiff has testified that there were a total of about three times throughout his employment when he missed work for Defendant due to a conflict with his municipal job. Also, although his work conflicts did not increase after he became a meter reader, his availability for weekend work assignments decreased. *Id*. 106:16-107:10. Plaintiff did not complain of any reduction in his work hours.

## Discussion

**A.    Hostile Work Environment**

A hostile work environment that violates Title VII is one involving harassment based on a prohibited factor, such as gender, that is "sufficiently severe or pervasive to alter the conditions of [the victim's] employment and create an abusive working environment." *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986). "Severity and pervasiveness are evaluated according to the totality of circumstances, *Harris v. Forklift Sys., Inc*., 510 U.S. 17, 23, 114 S. Ct. 367, 126 L. Ed. 2d 295 (1993), considering such factors as the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Chavez v. New Mexico*, 397 F.3d 826, 832 (10th Cir. 2005). "[T]he environment must be both subjectively and objectively hostile or abusive." *MacKenzie v. City of Denver*, 414 F.3d 1266, 1280 (10th Cir. 2005). The fact-finder must "judge the objective severity of the harassment from the perspective of a

reasonable person in the plaintiff's position, considering all the circumstances." *See Harsco Corp. v. Renner*, 475 F.3d 1179, 1187 (10th Cir. 2007); *see Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81 (1998); *Harris*, 510 U.S. at 21.

If these elements are established, a plaintiff must also establish a basis for holding the employer liable, such as proof that the employer "knew or should have known of the conduct and failed to stop it." *See Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 759 (1988). An employer's liability may also be established by a supervisory employee's misuse of authority under principles announced in *Ellerth* and a companion case, *Faragher v. Boca Raton*, 524 U.S. 775 (1988). Where an employee is subjected to "an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the employee" but "no tangible employment action is taken, a defending employer may raise an affirmative defense to liability or damages, subject to proof by a preponderance of the evidence." *Ellerth*, 524 U.S. at 765 (citation omitted); *Faragher*, 524 U.S. at 807 (same). "The defense comprises two necessary elements: (a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." *Ellerth*, 524 U.S. at 765; *Faragher*, 524 U.S. at 807.

In this case, Defendant primarily challenges Plaintiff's ability to prove objectively severe or pervasive sexual harassment. Defendant argues that the isolated verbal comments of Ms. Aberson directed at or overheard by Plaintiff are plainly insufficient. Defendant also relies on an *Ellerth/Faragher* defense. Defendant asserts that the undisputed facts that

Mr. Guthrie investigated Plaintiff's complaint and counseled Ms. Aberson about proper workplace conduct, and that Plaintiff experienced no further incidents of harassment, show that Defendant took prompt and effective remedial action, thus absolving it of any liability.

In response, Plaintiff points to no facts or evidence, even when viewed most favorably to him as required by Rule 56, that suggest Ms. Aberson engaged in conduct that could be considered objectively severe or pervasive enough to establish a hostile or abusive working environment based on gender. Plaintiff admits "the sexually explicit comments and advances made by Ms. Aberson were relatively slight," that is, not severe; but he argues, "a reasonable jury could nevertheless find that her conduct was sufficiently frequent and continuous to create a hostile work environment." *See* Pl.'s Resp. Br. at 16. This argument is based on vague references to "repeated instances of unwelcome sexual conduct" and Ms. Aberson's "continuous targeting of Plaintiff." *Id.* at 15.

The Court finds that Plaintiff's severity argument lacks factual support. Plaintiff's presentation of facts, which are accepted as true for summary judgment purposes, show only a few isolated incidents of gender-based comments. Under similar circumstances, the Tenth Circuit has found "there is simply insufficient evidence for a jury to find that the alleged harassment was pervasive." *See Morris v. City of Colo. Springs*, 666 F.3d 654, 666 (10th Cir. 2012); *see also Chavez*, 397 F.3d at 832 (two offensive remarks did not establish racially hostile work environment); *but see Lounds v. Lincare, Inc.*, 812 F.3d 1208, 1223 (10th Cir. 2015) ("the pervasiveness inquiry is not simply a counting measure but rather requires a broader contextual analysis;" incidents must be "sufficiently pervasive to create a genuine dispute of fact regarding the hostility of the environment") (internal quotation

9

omitted). Plaintiff has shown only a few instances of sexually suggestive comments that could not reasonably be found to constitute pervasive sexual harassment resulting in a hostile work environment.

The Court therefore finds that Plaintiff has failed to demonstrate a genuine dispute of material fact on the issue of whether he was subjected to severe or pervasive sexual harassment that a reasonable employee would view as creating a hostile or abusive working environment. For this reason, the Court finds that Defendant is entitled to summary judgment on Plaintiff's gender discrimination claim.[6]

**B.  Retaliation**

Defendant seeks summary judgment on Plaintiff's retaliation claim under the familiar burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Fye v. Okla. Corp. Comm'n*, 516 F.3d 1217, 1227 (10th Cir. 2008). Following *Burlington Northern & Santa Fe Railway Co. v. White*, 548 U.S. 53, 68 (2006), the initial *prima facie* case of retaliation is formulated as follows:

> To establish a prima facie case of retaliation, a plaintiff must demonstrate (1) that he engaged in protected opposition to discrimination, (2) that a reasonable employee would have found the challenged action materially adverse, and (3) that a causal connection existed between the protected activity and the materially adverse action.

*Argo v. Blue Cross & Blue Shield of Kans., Inc.*, 452 F.3d 1193, 1202 (10th Cir. 2006) (footnote omitted); *accord Proctor v. United Parcel Serv.*, 502 F.3d 1200, 1208 (10th Cir. 2007). Once a plaintiff makes this initial showing, "[i]f the defendant is able to articulate

---

[6] Accordingly, the Court finds no need to consider whether Defendant has sufficiently established its *Faragher/Ellerth* defense to liability for Ms. Aberson's conduct.

a legitimate nondiscriminatory reason for the adverse action, the plaintiff must then show that the articulated reasons are a pretext for retaliation." *Medlock*, 164 F.3d at 550. By its Motion, Defendant challenges only Plaintiff's ability to establish the second element of his *prima facie* case and his ability to prove pretext.[7]

1. ***Prima Facie* Case**

Defendant contends that Plaintiff has failed to show he experienced a materially adverse employment action, that is, one that might have "dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington*, 548 U.S. at 68 (internal quotation omitted). This element "requires injury rising to a level of seriousness" and involves an objective inquiry "not based on a plaintiff's personal feelings." *Daniels v. United Parcel Serv., Inc.*, 701 F.3d 620, 638 (10th Cir. 2012) (internal quotations omitted). To satisfy the second element, Plaintiff presents evidence of an unsubstantiated accusation of misconduct that did not result in discipline, a feeling of being ignored by management, and a reduction in his work hours through reassignment to a different food venue.

Upon consideration, the Court finds that neither of the first two circumstances could reasonably be found to constitute a materially adverse action. Plaintiff's reliance on his

---

[7] In its reply brief, Defendant adds a challenge to the first element, based on the proposition that a complaint is protected activity only if the employee has a "reasonable good-faith belief that the underlying conduct violated Title VII." *See Crumpacker v. Kan. Dep't of Human Res.*, 338 F.3d 1163, 1171-72 (10th Cir. 2003). Generally, the Court does not consider new matter raised for the first time in a summary-judgment reply brief. *See Green v. New Mexico*, 420 F.3d 1189, 1196 (10th Cir. 2005) ("nonmoving party should be given an opportunity to respond to new material raised for the first time in the movant's reply"); *see also Beaird v. Seagate Tech., Inc.*, 145 F.3d 1159, 1164 (10th Cir. 1998) ("Rule 56(c) requires the nonmoving party to be given notice and a reasonable opportunity to respond to the movant's summary judgment materials."). Thus, the Court declines to consider this issue.

own testimony and subjective view that accusations of food theft and distant conduct by mangers might discourage someone from making a complaint, fails to account for the objective nature of the inquiry. Further, the record is clear that these actions did not dissuade Plaintiff from pursuing his harassment complaint by filing an EEOC charge (in which he complained of this alleged retaliation) and making further complaints to management. The court of appeals has concluded that hostile treatment, unless pervasive, is "unlikely to deter a reasonable employee from making a charge of discrimination." *See Somoza v. Univ. of Denver*, 513 F.3d 1206, 1215 (10th Cir. 2008).[8]

The Court also finds, however, that a reasonable employee would view a decrease in work hours and a reassignment resulting in a shorter work shift as materially adverse actions. Although one might question whether these changes were causally related to Plaintiff's harassment complaints, that is a separate issue. On the record presented, the Court finds that Plaintiff has presented minimally sufficient facts from which to reasonably infer that he suffered a materially adverse action, and therefore, he has demonstrated a genuine dispute of material fact as to whether he can establish a *prima facie* case of retaliation.

---

[8] Recognizing this principle, Plaintiff argues in his brief only that his "earnings reduction and reassignment . . . constitute a jury question as to whether such actions were materially adverse." *See* Pl.'s Resp. Br. at 19 (emphasis added) (distinguishing these actions from ones that merely invoke "a general civility code," quoting *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998)).

## 2. Pretext

Proceeding to the next step of the *McDonnell Douglas* analysis, Defendant asserts that it had legitimate, nonretaliatory reasons for reassigning Plaintiff and reducing his work hours. Plaintiff responds by arguing that the asserted reasons are pretextual.

"A plaintiff can establish pretext by showing the defendant's proffered non-discriminatory explanations for its actions are so incoherent, weak, inconsistent, or contradictory that a rational factfinder could conclude they are unworthy of belief." *EEOC v. C.R. England, Inc.*, 644 F.3d 1028, 1038-39 (10th Cir. 2011) (internal quotations and alterations omitted); *see Foster v. Mountain Coal Co.*, 830 F.3d 1178, 1194 (10th Cir. 2016); *Fye*, 516 F.3d at 1228. "A plaintiff demonstrates pretext by showing either that a [retaliatory] reason more likely motivated the employer or that the employer's proffered explanation is unworthy of credence." *Zamora v. Elite Logistics, Inc.*, 478 F.3d 1160, 1166 (10th Cir. 2007) (internal quotation omitted).

Upon consideration of the record presented, the Court finds that Plaintiff has failed to present sufficient facts and evidence from which a reasonable finding of pretext could be made. Plaintiff argues that "Defendant offers no evidence that Plaintiff's reduction in hours was due to any reason other than retaliatory animus" and that "Defendant offers no reasons whatsoever for why it was willing to accommodate Plaintiff's unique scheduling needs at the Gastropub for a long period of time, and then suddenly was unwilling to do so, resulting in his reassignment to the Saucy Chicken." *See* Pl.'s Resp. Br. at 20. These misguided arguments improperly shift the burden of proof to Defendant. It is well established that once an employer offers a facially nonretaliatory reason for the challenged

employment decision, "it then becomes Plaintiff's burden to show that there is a genuine dispute of material fact as to whether the employer's proffered reason for the employment decision was pretextual." *See Randle v. City of Aurora*, 69 F.3d 441, 451 (10th Cir. 1995); *see Annett v. Univ. of Kan.*, 371 F.3d 1233, 1240 (10th Cir. 2004). At this point in the analysis, Plaintiff must "assume the normal burden of any plaintiff to prove his or her case at trial." *Annett*, 371 F.3d at 1241 (internal quotation omitted).

In this case, as in *Fye*, 516 F.3d at 1229, Plaintiff "has failed to present any evidence that casts doubt on [Defendant's] profferred explanation." If anything, Plaintiff agrees that Defendant's stated reason is sound; his work shift in the Saucy Chicken venue better fit his unique schedule. Plaintiff questions only why Defendant waited to make the change. The fact that Defendant chose to accommodate Plaintiff's schedule for the 2017-18 NBA season by reassigning him in October 2017 does not suggest the decision was pretextual or motivated by retaliatory animus.[9]

In short, the Court finds that Plaintiff has failed to present facts that, viewed most favorably to him, establish a genuine dispute of material fact regarding pretext. Therefore, Defendant is entitled to summary judgment on Plaintiff's claim of retaliation.

**C.    Intentional Infliction of Emotional Distress**

To prevail on a claim of intentional infliction of emotional distress under Oklahoma law, a plaintiff must show: "(1) the defendant acted intentionally or recklessly, (2) the

---

[9] In fact, Plaintiff's reassignment to Gastropub in May 2016 (allegedly a better assignment) post-dated his sexual harassment complaint, suggesting that Defendant's decisions were motivated by staffing needs and not retaliation.

14

defendant's conduct was extreme and outrageous, (3) the defendant's conduct caused the plaintiff emotional distress, and (4) the resulting emotional distress was severe." *See Computer Publ'ns, Inc. v. Welton*, 49 P.3d 732, 735 (Okla. 2002). To satisfy the second element, the defendant's conduct must be so extreme and outrageous as to be "beyond all possible bounds of decency" in the setting in which it occurred, or "utterly intolerable in a civilized community." *See Eddy v. Brown*, 715 P.2d 74, 77 (Okla. 1986); *see also Welton*, 49 P.3d at 735; *Kraszewski v. Baptist Med. Ctr. of Okla., Inc.*, 916 P.2d 241, 248 (Okla. 1996). "In general, a plaintiff must prove that the recitation of defendant's conduct to an average member of the community would arouse the listener's resentment against the defendant and would lead the listener to exclaim 'Outrageous!'" *Welton*, 49 P.3d at 735.

In this case, Defendant contends the factual allegations on which Plaintiff relies to establish sexual harassment and retaliation, even if proven, are insufficient to show extreme and outrageous conduct. Defendant relies on employment-related cases such as *Miner v. Mid-America Door Co.*, 68 P.3d 212 (Okla. Civ. App. 2002), and *Daniels v. C.L. Frates & Co.*, 641 F. Supp. 2d 1214 (W.D. Okla. 2009), for the proposition that conduct constituting sexual harassment, a hostile work environment, or retaliation actionable under Title VII do not establish the tort of outrage under Oklahoma law. *See* Def.'s Br. at 27-28 (also quoting an unpublished order of the undersigned, *Tilghman v. Kirby*, Case No. CIV-13-73-D, 2015 WL 5472498, *6 (W.D. Okla. Sept. 16, 2015)).

Plaintiff provides no persuasive response to this argument. He contends only that facts relevant to his claims are disputed, "including the motives behind the employment actions taken against Plaintiff," and that "a reasonable person might find outrageous or

15

intolerable" conduct in this case. *See* Pl.'s Resp. Br. at 22. Plaintiff makes no effort to distinguish the cited cases. This silence is telling.

In *Miner*, for example, two employees who were verbally abused and physically threatened by an alleged supervisor asserted a claim of outrage based on their employer's failure to remedy the situation in a timely manner. A summary judgment in favor of the employer was affirmed even though the appellate court disagreed with the trial court's finding that the material facts were undisputed. The appellate court found that "the company's conduct, *even if untimely and unreasonable*, was not such conduct as could reasonably be found to be 'beyond all possible bounds of decency in the setting in which it occurred' or 'utterly intolerable in a civilized community.'" *Miner*, 68 P.3d at 224 (emphasis in original). Relying on *Miner* and other Oklahoma court decisions, Judge Cauthron reached a similar conclusion in *Daniels*, 641 F. Supp. 2d at 1218, reasoning as follows:

> The crux of Plaintiff's claim is that she was subjected to a continuing hostile work environment due to the actions of [a senior manager] and that Defendant did nothing to ameliorate the situation. Additionally, she contends that Defendant retaliated against her by transferring her to a less desirable position after she reported the harassment. Oklahoma courts, however, have routinely held that workplace harassment claims do not rise to the level of outrageous conduct necessary to support a claim of intentional infliction of emotional distress. Nothing in Plaintiff's allegations indicates that this Court should reach a contrary result and therefore her claim must fail as a matter of law.

Similarly here, regardless whether Defendant failed to make an appropriate response to the alleged sexual harassment, and regardless whether Defendant retaliated against

16

Plaintiff by reassigning him or reducing his work hours, Plaintiff fails to allege any conduct that was sufficiently outrageous to hold Defendant liable in tort.

**Conclusion**

For these reasons, the Court finds that Defendant is entitled to summary judgment on Plaintiff's hostile work environment and retaliation claims under both federal and state law,[10] and on Plaintiff's tort claim of intentional infliction of emotional distress.

IT IS THEREFORE ORDERED that Defendant's Motion for Summary Judgment [Doc. No. 38] is GRANTED. A separate judgment shall be entered accordingly.

IT IS SO ORDERED this 19th day of April, 2019.

_____
TIMOTHY D. DeGIUSTI
UNITED STATES DISTRICT JUDGE

---

[10] The parties both agree that a claim that fails under Title VII also fails under Oklahoma law. *See* Def.'s Opening Br. at 14; Pl.'s Resp. Br. at 14.